UNITED STATES *v.* SHAPIRO & CO. (No. 2833)[1]

United States Court of Customs Appeals, April 16, 1927

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument March 17, 1927, by Mr. Carter and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Cotton cloth in the piece, 30 to 40 yards in length and 36 inches wide and having plaits or tucks produced during the process of weaving the cloth, was classified by the collector at the port of New York as a fabric in part of tuckings. The goods were, therefore, assessed for duty at 90 per centum ad valorem under that part of paragraph 1430 of the Tariff Act of 1922 which reads as follows:

1430. Laces * * * tuckings * * * and all fabrics or articles composed in part, however small, of any of the foregoing fabrics or articles * * * 90 per centum ad valorem.

The importer protested that the merchandise was not dutiable at 90 per centum ad valorem under paragraph 1430 but that it was dutiable at 40 per centum ad valorem as cotton cloth under paragraph 921 of said act, which reads as follows:

921. All articles made from cotton cloth, whether finished or unfinished, and all manufactures of cotton or of which cotton is the component material of chief value, not specially provided for, 40 per centum ad valorem.

On the ground that the plaits or tucks were produced during the process of weaving the fabric and were not made after the cloth was woven, the United States Customs Court held that the fabric was not in part of tuckings and, therefore, sustained the protest.

From the testimony and the samples in evidence in the case it appears that the merchandise is cotton cloth in the piece and that the entire importation was plaited during the process of weaving the cloth. The samples of the importation in evidence disclose that

---

most, if not all of them, in addition to being plaited, are figured. The protest of the importing company makes no claim that any of the merchandise is figured cotton cloth.

The evidence establishes that cotton cloth of the kind here involved is used exclusively for the purpose of making men's shirts and that the shirts, when made up, are ordered as plaited shirts. No evidence was introduced proving or tending to prove that the term "tuckings" had any meaning in the trade other than that commonly and ordinarily assigned to it. In fact the only witness produced on the hearing before the United States Customs Court testified that he knew of no meaning of the word "tuckings" other than that given to it by the dictionary. That witness stated that the plaits or folds on the cloth were produced by weaving and were not stitched by hand or machine after the cloth was made; that the folds were woven on dobby looms and were dobbies or dobby weaves and that a dobby weave was a fancy weave; that shirts with tucks in them were called plaited-bosom shirts and that he meant by a plaited bosom, a *tucked bosom;* that shirts made of the cloth imported were not tucked bosom shirts but were French bosom shirts, that is to say bosoms imported from France; that a shirt with the plaits stitched on it and with the cloth folded and stitched to the shirt would constitute a tucking or plait; that tucking and plaiting produced substantially the same results and that tuckings and plaits were substantially the same. The witness insisted, however, that the merchandise which is the subject of this appeal was neither plaited nor tucked because the folds were produced, by weaving, in the making of the cloth and not by stitching or sewing after the cloth was made.

The only question presented by the evidence in this case is whether folds or plaits produced in cloth during the process of weaving are tuckings within the common, ordinary meaning of the term.

According to Webster's New International Dictionary the word "tucking" is often used in the plural and means a tuck or tucks collectively; also cloth having tucks *either woven in or sewed in.*

The cloth imported has tucks woven into it and therefore must be regarded as tuckings. Indeed, if tuckings were not defined to be tucks either woven in or sewed in cloth, that meaning seems to have been established for the term by judicial decisions. Judge Fischer, for the Board of General Appraisers, as early as April 16, 1900, held that tuckings might be either sewed or woven and that whether folds, tucks, or plaits were produced in cloth by one process or the other, they were tuckings. *In re Whytlaw, Son & Co.*, 3 Treas. Dec. 365. In February, 1918, Judge Cooper, for the Board of General Appraisers, held that figured cotton cloth ornamented with *loom-woven* tucks was dutiable at 60 per centum ad valorem under paragraph 358

of the tariff act of 1913, which paragraph provided *eo nomine* for tuckings. *In re A. Sulka & Co.*, 34 Treas. Dec. 602.

The folds in the cloth imported are not made for the purpose of shortening the fabric but for the purpose of ornamentation, and whether such tuckings are woven during the making of the cloth or stitched or sewed in after the cloth is made, the same result is accomplished and they come within the common meaning of the term "tuckings."

The goods were properly classified by the collector, and the judgment of the United States Customs Court must therefore be *reversed*.